IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:14-CV-288-MR-DLH

| CATHERINE DIEHL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **DECLARATION OF** |
| | ) | **WILLIAM K. DIEHL, JR.** |
| WILLIAM K. DIEHL, JR., | ) | |
| Defendant. | ) | |
| _____ | ) | |

William K. Diehl, Jr., declares the following, under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am seventy (70) years of age, of competent mind, and provide this Declaration based upon my personal knowledge.

2. I have been licensed to practice law in the State of North Carolina since August 1969.

3. I have spent my entire legal career practicing law with James, McElroy & Diehl, P.A., and its predecessors (collectively, "JMD").

4. I currently am employed with JMD as a practicing attorney.

5. Catherine L. Diehl ("Catherine" or "Plaintiff") and I married on June 11, 1966, separated on February 2, 2003, and divorced on April 11, 2007.

6. Catherine and I are the parents of one (1) son and one (1) daughter--both of whom were born to our marriage and are over eighteen (18) years of age--and we also are the paternal grandparents of two minor children.

7. Catherine and I executed a Contract of Separation and Property Settlement Agreement ("Agreement") in August 2004, a true and accurate copy of which is attached to Catherine's Complaint for Damages and Injunctive Relief/Specific Performance. [Doc. 1-1, pp. 2-24].

8. Pursuant to Paragraph 19 of the Agreement, I transferred to Catherine my entire right, title, and interest in two (2) condominium units (together, the "Toler's Cove Residence") in a development located in Mount Pleasant, South Carolina, along with a boat slip fronting the Toler's Cove Residence. I also paid $41,192.00 in October 2004, for Catherine's benefit, to satisfy special assessments upon the Toler's Cove Residence, as contemplated by Paragraph 19 of the Agreement.

9. I agreed in Paragraph 27 of the Agreement to pay Catherine $10,000.00 upon execution of the Agreement. [Doc. 1-1, p. 14]. I made such payment.

10. I also agreed in Paragraph 27 of the Agreement to make certain other payments to Catherine so long as all of the following conditions exist:

    a. I am alive,

    b. She is alive,

    c. She "does not remarry," and

    d. I am "employed with [JMD] as a practicing attorney…" or, if no longer so employed with JMD, I "continue[] to practice law on a regular basis, either on [my] own, in a partnership, or as a member of another firm…."

[Doc. 1-1, p. 14] (alterations and ellipses added).

    11.    Specifically, I agreed to make the following payments to Catherine in this regard, all non-taxable to her and non-deductible by me:

    a. $12,000.00 each month if my salary remained at or above its August 2004 level, or, alternatively, 24% of my salary if it decreased from its 2004 level,[1] and

    b. 7.5% of every "net bonus" actually paid to me, that is, the amount actually paid to me after deducting taxes and other standard withholdings.

[Doc. 1-1, pp. 14-16].

    12.    I paid Catherine $12,000.00 for each month of the 109-month expanse of time from September 2004 through October 2013, for a grand total of $1,308,000.00 ($12,000.00 x 109 months = $1,308,000.00).[2]

    13.    I also paid Catherine 7.5% of every "net bonus" I received from December 2004 through June 2013, for a grand total of $434,815.67.

---

[1] My salary has remained at its August 2004 level at all times since Catherine and I executed the Agreement.

[2] Small portions of the payments Catherine received for December 2005; May 2006; January 2007; May 2007; and December 2007 came by way of a reimbursement, refund, or the like.

14. All told, from September 2004 through October 2013, Catherine received $1,742,815.67 in non-taxable funds from me under the auspices of Paragraph 27 of the Agreement ($1,308,000.00 + $434,815.57 = $1,742,815.67).

15. I have not made any monthly payment to Catherine since October 2013, nor have I paid her any percentage of my "net bonus" of (a) $89,977.50 in December 2013; (b) $200,550.00 in June 2014; or (c) $100,275.00 in December 2014.[3]

16. I ceased making all such payments to Catherine because she and an adult male widower, James H. Shuttleworth ("Jim"), had begun cohabiting together in the Toler's Cove Residence.

17. I objected to their cohabitation (and my concomitant *de facto* financial support of Jim) in correspondence exchanged in September/October 2012, and I later explained via correspondence in January 2014 my position that a marriage between Catherine and Jim had arisen under the common law of South Carolina.[4]

---

[3] Catherine has sought the production of information and documents concerning my salary and bonuses since 2011, see [Docs. 20, 27], as well my pay records and tax returns for 2011-2013. See [Docs. 21, 28]. I have opposed her only to the extent she seeks such information and documents pre-dating October 2013, see [Doc. 25, p. 3], and my statements in Paragraphs 11 and 16 herein concerning my salary and bonuses cover the undisputed period of time post-October 2013.

[4] One copy of the pertinent correspondence exchanged in September/October 2012 and January 2014 is included herewith as composite **Exhibit A**.

18. Catherine and Jim have cohabited together continuously in the Toler's Cove Residence in an intimate, apparently matrimonial relationship for approximately three (3) years, and that relationship continues to this day.

19. Catherine and Jim carry the reputation of husband and wife in the pertinent communities with which I am familiar, namely, (a) my family; (b) mutual friends of Catherine and me; and (c) Charleston County, South Carolina, where I own a residence and spend significant time.

20. I have observed Catherine and Jim act both publicly and privately as if they are husband and wife.

21. Catherine and Jim travel together as if they are husband and wife.

22. Upon information and belief, Catherine and Jim jointly pay for certain expenses as if they are husband and wife.

23. Upon information and belief, at some point in time during their approximate three-year cohabitation in South Carolina, Catherine and Jim shared a mutual intent to be married and understood each other's intent.

24. I first learned after Catherine commenced this lawsuit that she and Jim executed an Agreement ("Cohabitation Agreement") in South Carolina on March 21, 2012, representing that they would begin living together in the Toler's Cove Residence in March 2012.

25. I paid Catherine a total of $294,976.07 after March 31, 2012, in relation to Paragraph 27 of the Agreement, consisting of (a) $228,000.00 in monthly payments ($12,000.00 x 19 months = $228,000.00); plus (b) $37,997.00 from my "net bonus" in June 2012; plus (c) $17,731.88 from my "net bonus" in December 2012; plus (d) $11,247.19 from my "net bonus" in June 2013 ($228,000.00 + $37,997.00 + $17,731.88 + $11,247.19 = $294,976.07).[5]

26. I contend with respect to my counterclaim that Catherine owes me damages of at least $294,976.07, plus interest accruing at 8% per annum, for each payment she accepted under Paragraph 27 of the Agreement after her common law marriage to Jim arose.

27. This Court entered a Pretrial Order and Case Management Plan on September 9, 2014, which established a discovery deadline of May 1, 2015; a mediation deadline of May 15, 2015; and a motions deadline of June 1, 2015. [Doc. 18, p. 1].

28. Catherine and I have designated Wayne P. Huckel to mediate this action. [Doc. 19, p. 1].

---

[5] My Defendant's Rule 26 Disclosures provided documentation showing the amount of each "net bonus" I received from June 2007 through June 2013, and I include pertinent portions of such documentation herewith as composite **Exhibit B** solely for the purpose of disputing Catherine's recent accusation that I did not produce documentation concerning my bonuses. See [Doc. 27, p. 4] ("Despite his representations to the contrary, Defendant only provided the amount of the bonus he received on 4 occasions – June 27, 2007, December 28, 2007, June 26, 2008, and December 22, 2010.").

29. Catherine filed her pending Plaintiff's Motion for Summary Judgment and accompanying materials on February 19, 2015, [Docs. 24 – 24-7], after this Court summarily struck her initial summary judgment papers filed on February 13, 2015. [Docs. 22 – 23].

30. Whether Catherine and Jim married under the common law of South Carolina and, if so, when, are critical issues in this lawsuit. Those issues implicate subsidiary questions of intent, such as whether Catherine and Jim have intended to cohabit in a marital relationship, or, conversely, an illicit one.

31. I have not yet exhausted my efforts to complete discovery in this lawsuit--particularly concerning the question of Catherine and Jim's respective intent to marry at any time over the last three-plus years--and the judicially prescribed discovery period has not yet closed.

32. I have not been dilatory in my efforts concerning discovery, although my efforts in this regard admittedly have been hampered by (a) my reticence to subject family and friends to examination regarding the nature of Catherine and Jim's intimate relationship, see [Doc. 25-1, p. 2] (identifying the parties' children and specific friends as among those having knowledge of such relationship); and (b) the relatively sudden death of my longtime legal assistant, Vicki B. Owens, on January 11, 2015.

33. Deferring consideration of any summary judgment motion until after the discovery deadline passes would enable this Court to rule on a fuller evidentiary record, and it likewise would enable the parties to participate in mediation before this Court renders any potentially dispositive decision.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 9, 2015.

_____
William K. Diehl, Jr.

# CERTIFICATE OF SERVICE

I hereby certify that this **DECLARATION OF WILLIAM K. DIEHL, JR.** was served upon Plaintiff's counsel of record via this Court's CM/ECF system as follows:

> Robert E Sumner, IV – robertsumner@mvalaw.com
> Trudy H. Robertson – trudyrobertson@mvalaw.com

This 9th day of March, 2015.

**James, McElroy and Diehl, P.A.**

/s/ William K. Diehl, Jr.
William K. Diehl, Jr.
N.C. State Bar No. 1187
600 South College Street
Charlotte, North Carolina 28202
704-372-9870 (telephone)
704-333-5508 (facsimile)
BDiehl@jmdlaw.com
*Counsel for Defendant*