IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:14-CV-288-MR-DLH

| | | |
|---|---|---|
| CATHERINE DIEHL, | ) | |
| Plaintiff, | ) ) ) | **BRIEF IN SUPPORT OF DEFENDANT'S RULE 56(d)** |
| v. | ) ) | **MOTION AND IN OPPOSITION TO PLAINTIFF'S SUMMARY** |
| WILLIAM K. DIEHL, JR., | ) ) | **JUDGMENT MOTION** |
| Defendant. | ) | |
| _____ | ) | |

## I. Preliminary Statement

William K. Diehl, Jr. ("Defendant"), respectfully submits this Brief in support of his Defendant's Rule 56(d) Motion ("Rule 56(d) Motion") and in opposition to the Plaintiff's Motion for Summary Judgment ("Summary Judgment Motion"). [Doc. 24]. As detailed herein, this Court should either (1) grant the Rule 56(d) Motion and dismiss the Summary Judgment Motion without prejudice; or (2) deny the Summary Judgment Motion.

## II. Pertinent Background

Defendant is seventy (70) years of age and has been licensed to practice law in the State of North Carolina since August 1969. [Declaration of William K. Diehl, Jr. ("Diehl Decl."), p. 1(¶¶ 1-2)]. He has spent his entire legal career practicing law with James, McElroy & Diehl, P.A., and its predecessors

(collectively, "JMD"), and he remains employed with JMD as a practicing attorney. [Diehl Decl., p. 1(¶¶ 3-4)].

Defendant and Catherine L. Diehl ("Plaintiff") (jointly, the "Parties") were married to each other for almost forty-one (41) years, having married on June 11, 1966, separated on February 2, 2003, and divorced on April 11, 2007. [Diehl Decl., p. 1(¶ 5)]. The Parties are the parents of one (1) son and one (1) daughter-- both of whom were born to their marriage and are over eighteen (18) years of age-- and they also are the paternal grandparents of two minor children. [Diehl Decl., p. 2(¶ 6)].

The Parties executed a Contract of Separation and Property Settlement Agreement ("Agreement") in August 2004, a true and accurate copy of which is attached to the Complaint for Damages and Injunctive Relief/Specific Performance ("Complaint"). [Doc. 1-1, pp. 2-24; Diehl Decl., p. 2(¶ 7)]. Pursuant to Paragraph 19 of the Agreement, Defendant transferred to Plaintiff his entire right, title, and interest in two (2) condominium units (together, the "Toler's Cove Residence") in a development located in Mount Pleasant, South Carolina, along with a boat slip situated directly in front of the Toler's Cove Residence. [Diehl Decl., p. 2(¶ 8)]. Defendant also paid $41,192.00 in October 2004, for Catherine's benefit, to satisfy special assessments upon the Toler's Cove Residence, as contemplated by Paragraph 19 of the Agreement. [Id.].

In Paragraph 27 of the Agreement, Defendant agreed to pay Plaintiff $10,000.00 upon execution of the Agreement. [Doc. 1-1, p. 14; Diehl Decl., p. 2(¶ 9)]. He made such payment. [Id.]. Defendant also agreed in Paragraph 27 of the Agreement to make certain other payments to Plaintiff so long as all of the following conditions exist: (a) Defendant is alive, (b) Plaintiff is alive, (c) Plaintiff "does not remarry," and (d) Defendant is "employed with [JMD] as a practicing attorney…" or, if no longer so employed with JMD, he "continues to practice law on a regular basis, either on his own, in a partnership, or as a member of another firm…." [Doc. 1-1, p. 14; Diehl Decl., pp. 2-3(¶ 10)] (alterations and ellipses added).[1] Specifically, Defendant agreed to make the following payments to Plaintiff in this regard, all non-taxable to her and non-deductible by him:

a. $12,000.00 each month if Defendant's salary remained at or above its August 2004 level, or, alternatively, 24% of his salary if it decreased from its 2004 level, and

b. 7.5% of every "net bonus" actually paid to Defendant, that is, the amount actually paid to him after deducting taxes and other standard withholdings.

[Doc. 1-1, pp. 14-16; Diehl Decl., p. 3(¶ 11)].

Defendant's salary has remained at its August 2004 level at all times since the Parties executed the Agreement. [Diehl Decl., p. 3(¶ 11, n.1)]. In this vein, Defendant paid Plaintiff $12,000.00 for each month of the 109-month expanse of

---

[1] Unless specified otherwise, all ellipses, emphasis, and alterations appearing in quotations herein are added, and all internal citations, internal quotation marks, quoted sources, and footnotes are omitted.

time from September 2004 through October 2013, for a grand total of $1,308,000.00. [Diehl Decl., p. 3(¶ 12)]. Defendant also paid Plaintiff 7.5% of every "net bonus" he received from December 2004 through June 2013, for a grand total of $434,815.67. [Diehl Decl., p. 3(¶ 13)]. All told, from September 2004 through October 2013, Plaintiff received roughly $1,742,815.67 in non-taxable payments from Defendant under the auspices of Paragraph 27 of the Agreement. [Diehl Decl., p. 4(¶ 14)].

Defendant made his last payment to Plaintiff under Paragraph 27 of the Agreement in October 2013. [Diehl Decl., p. 4(¶ 15)]. He ceased making any further payments because Plaintiff and an adult male widower, James H. Shuttleworth ("Mr. Shuttleworth"), had begun cohabiting together in the Toler's Cove Residence in an intimate, apparently matrimonial relationship. [Diehl Decl., pp. 4-5(¶¶ 16, 18)]. Indeed, Defendant previously had objected to such cohabitation (and his concomitant *de facto* financial support of Mr. Shuttleworth) in correspondence exchanged in September/October 2012. [Diehl Decl., p. 4(¶ 17) & Ex. A]. Defendant later explained in January 2014 correspondence his position that a marriage between Plaintiff and Mr. Shuttleworth had arisen under the common law of South Carolina. [Id.].

Plaintiff thereafter commenced this lawsuit on June 3, 2014, alleging that Defendant breached the Agreement by not making any payments to her after

October 2013. [Doc. 1]. Defendant, in turn, denied liability, asserted various affirmative defenses (including common law marriage and unclean hands), and counterclaimed to recover all payments Plaintiff received from him after her common law marriage to Mr. Shuttleworth arose. [Doc. 11]. In this vein, Defendant seeks to recover at least $294,976.07, plus interest accruing at 8% per annum, from Plaintiff with respect to his counterclaim. [Diehl Decl., p. 6(¶¶ 25-26)].

This Court entered a Pretrial Order and Case Management Plan on September 9, 2014, which established a discovery deadline of May 1, 2015; a mediation deadline of May 15, 2015; and a motions deadline of June 1, 2015. [Doc. 18, p. 1; Diehl Decl., p. 6(¶ 27)]. The Parties subsequently designated Wayne P. Huckel to mediate this action, [Doc. 19, p. 1; Diehl Decl., p. 6(¶ 28)], and they currently are embroiled in a discovery dispute concerning whether Plaintiff may obtain information and documents concerning Defendant's salary, bonuses, pay records, and tax returns encompassing any period before October 2013. [Docs. 20 – 21-12, 25 – 27-1].

Plaintiff filed her pending Summary Judgment Motion and accompanying materials on February 19, 2015. [Docs. 24 – 24-7]. Defendant now submits this Brief, his Rule 56(d) Motion, and his declaration in opposition to the pending Summary Judgment Motion.

### III. Argument

### A. This Court Should Grant Defendant's Rule 56(d) Motion

Rule 56(d) of the Federal Rules of Civil Procedure (2015) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)    defer considering the motion or deny it;
>
> (2)    allow time to obtain affidavits or declarations or to take discovery; or
>
> (3)    issue any other appropriate order.

Id. Granting relief under Rule 56(d) typically constitutes a matter of discretion, see, e.g., McCray v. Maryland Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014), although "[a] Rule 56(d) motion must be granted where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Id. Moreover, Rule 56(d) motions "are broadly favored and should be liberally granted in order to protect non-moving parties from premature summary judgment motions." Id.; accord Stellar Ins. Group, Inc. v. Central Cos., LLC, No. 2:06-CV-11, 2007 U.S. Dist. LEXIS 42737, *10 (W.D.N.C. 2007) (Howell, Mag. J.) ("[C]ase law indicates that the court should hesitate before denying Rule 56(f) motions when the party opposing summary judgment is attempting to obtain necessary discovery from information possessed only by its opponent").[2]

---

[2] The version of Rule 56(f) cited in Stellar Ins. Group is materially similar to current Rule 56(d). See McCray, 741 F.3d at 484, n.2 ("The language of Rule

In this case, whether Plaintiff and Mr. Shuttleworth ever married under the common law of South Carolina and, if so, when, are issues of critical import. [Diehl Decl., p. 7(¶ 30)]. Those issues, in turn, implicate subsidiary questions of intent, i.e., whether Plaintiff and Mr. Shuttleworth have intended at all times over the last three-plus years to cohabit in a marital relationship, or, conversely, an illicit one. [Id.]. Defendant has not yet exhausted his efforts to complete discovery regarding such issues, and the judicially prescribed discovery period has not yet closed. [Diehl Decl., p. 7(¶ 31)]. Moreover, Defendant has not been dilatory in pursuing discovery, although he admits that his efforts in this regard have been hampered by (1) his reticence to subject the family and friends to examination regarding the nature of Plaintiff and Mr. Shuttleworth's intimate relationship; and (2) the relatively sudden death of his longtime legal assistant, Vicki B. Owens, on January 11, 2015. [Diehl Decl., p. 7(¶ 32)]. Finally, deferring the consideration of any summary judgment motion until after the discovery deadline passes would (1) enable this Court to rule on a fuller evidentiary record; and (2) allow the parties to participate in mediation, all before this Court renders any potentially dispositive decision. [Diehl Decl., p. 8(¶ 33)].

Based on the foregoing, Defendant respectfully submits that this Court should grant his Rule 56(d) Motion and dismiss Plaintiff's Summary Judgment

---

56(d) appeared in Rule 56(f) before amendments in 2010, but these amendments made no substantial change to the rule.").

Motion without prejudice to refiling after the close of discovery.  See, e.g., Rinaldi v. CCX, Inc., No. 3:11-CV-457, 2013 U.S. Dist. LEXIS 36960, *7, *13 (Keesler, Mag. J.) (recommending a similar disposition and citing Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 247 (4th Cir. 2002), for the following proposition: "The entry of summary judgment before completion of sufficient discovery can be inappropriate when the action involves complex factual questions surrounding intent and motive."), aff'd, 2013 U.S. Dist. LEXIS 36955, *1 (W.D.N.C. 2013) (Mullen, J.).

## B. This Court Should Deny The Summary Judgment Motion

### 1. Standard Of Review

This Court aptly summarized the applicable summary judgment standard of review in United States v. $40,000 in United States Currency, No. 1:09-CV-383, 2010 U.S. Dist. LEXIS 123807 (W.D.N.C. 2010) (Reidinger, J.):

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.P. 56(c).  As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), certiorari denied 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), certiorari denied 513 U.S. 813, 115 S. Ct. 67, 130 L. Ed. 2d 24, 513 U.S. 814 (1994), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522, citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

United States v. $40,000 in United States Currency, 2010 U.S. Dist. LEXIS 123807 at *4-*6 (ellipses and emphasis in original). As explained below, Plaintiff's Summary Judgment Motion fails in light of these controlling principles.[3]

---

[3] Defendant does not address Plaintiff's arguments concerning interest, attorneys' fees, and costs because she is not entitled to summary judgment regarding the Parties' substantive claims and defenses. See pp.10-18, infra. He will brief those collateral issues at a later time should they become ripe for resolution.

## 2. Genuine Issues Of Material Fact Exist Concerning
## The Issue Of Common Law Marriage

The Parties' competing claims and defenses hinge upon one central issue: whether Plaintiff and Mr. Shuttleworth have ever married under the common law of South Carolina. See, e.g., [Docs. 1, 11, 16]. This is so because Paragraph 27 of the Agreement expressly prescribes Plaintiff's remarriage as a terminating event, see [Doc. 1-1, p. 14; Diehl Decl., pp. 2-3(¶ 10)], and she concedes that a South Carolina common-law marriage would constitute such an event. See [Doc. 24-1, pp. 7-8] (acknowledging that North Carolina law, which generally governs the Agreement, would recognize a South Carolina common law marriage as a terminating event); accord, e.g., Parker v. Parker, 46 N.C. App. 254, 258, 265 S.E.2d 237, 240 (1980) ("Our Supreme Court stated in Harris v. Harris, 257 N.C. 416, 420, 126 S.E. 2d 83, 85 (1962): 'If the relation of plaintiff and defendant subsequent to [one of the party's] valid divorce was sufficient to constitute a valid marriage in South Carolina, such marriage would be given full recognition in this State.'") (alteration added in Parker)). Genuine issues of material fact exist regarding this seminal issue, thereby precluding its resolution by way of summary judgment.

Plaintiff begins her substantive argument by framing the issue of common law marriage as "a question of law and, as such, … well-suited for summary judgment." [Doc. 24-1, p. 9]. She misapprehends South Carolina law in doing so,

however, for while "[t]he issue of common law marriage sounds in law …., the existence of a common law marriage is question of fact…." Davitt v. Soaker (In re Estate of Duffy), 392 S.C. 41, 45, 707 S.E.2d 447, 449 (S.C. Ct. App. 2011); see, e.g., Campbell v. Christian, 235 S.C. 102, 104, 110 S.E.2d 1, 2 (S.C. 1959) ("The case is at law…, and the single issue is one of fact, to wit: Were James Woodrow Campbell and Beulah Poole Campbell husband and wife on July 17, 1954?"); Johnson v. Johnson, 235 S.C. 542, 550, 112 S.E.2d 647, 651 (S.C. 1960) ("The existence of a marriage is a question of fact."); Tahaei v. Tahaei, No. 2014-MO-021, 2014 S.C. Unpub. LEXIS 23, *1 (S.C. 2014) (Unpublished Opinion) (citing Campbell in observing that "[a]n action to determine the existence of a common law marriage is an action at law, but the question of whether a common law marriage exists is one of fact"). Indeed, it is well-known that whether a common law marriage exists is a quintessential issue of fact seldom resolvable by way of summary judgment:

> Regardless of the context, all of the[] cases demonstrate that the fact-intensive nature of common law marriage claims makes the doctrine judicially cumbersome. While some proponents of common law marriage argue the doctrine is realistic and can be applied with "ease and certainty," these arguments fail to take into account the unlikelihood of summary judgment given the fact-sensitive nature of the claims.

Ashley Hedgecock, Estate and Family Law: Untying the Knot: The Propriety of South Carolina's Recognition of Common Law Marriage, 58 S.C. L. Rev. 555, 577

(Spring 2007) (hereinafter "Hedgecock, Untying the Knot"). Plaintiff thus rests

her substantive argument upon a faulty premise.[4]

Plaintiff thereafter points to an Agreement ("Cohabitation Agreement") that

she and Mr. Shuttleworth executed on March 21, 2012--along with their respective

affidavits--as purportedly establishing they never married under South Carolina

common law. See [Doc. 24-1, pp. 10-12]. In doing so, she overlooks Defendant's

verified interrogatory responses, which provide, in pertinent part:

> 7. Please describe your basis for alleging that Plaintiff is common law married.
>
> **ANSWER: Plaintiff resides with Mr. Shuttlesworth (sic). They have for some time. They travel together and would hold themselves out to anyone that sees them as though they were married. All individuals named in Defendant's Rule 26 Disclosures have observed or are aware of this "common law marriage."**
>
> …
>
> 9. Please describe any persons whom you have interviewed or with whom you have spoken that support your allegation that Plaintiff is common law married.
>
> **ANSWER: I have interviewed no one. I have spoken with my son, my daughter and with Mr. and Mrs. Thompson, Mike and Jackie Cooke, Carolyn McCullen, [and] Jo Brent Austin. I have personally witnessed Plaintiff**

---

[4] She also mistakenly deems this case "unusual" because a "third party" (Defendant) asserts the existence of a common-law marriage. Compare [Doc. 24-1, p. 10] (making such statement), with Hedgecock, Untying the Knot, 58 S.C. L. Rev. at 577 (citing six (6) South Carolina appellate decisions for the proposition that "[m]ale claimants frequently allege their former spouse has entered into a common law marriage with a third party and thus seek termination of alimony payments based on this remarriage or change in circumstances").

**and Mr. Shuttlesworth (sic) conducting themselves as though they were married.**

10. Please describe any investigations, research, or searches you have conducted in order to arrive at your opinion that Plaintiff is common law married.

**ANSWER: I am a lawyer. I have familiarized myself with South Carolina law related to common law marriage. Plaintiff and Mr. Shuttlesworth (sic) have conducted themselves as though they were married.**

[Doc. 20-3, pp. 4-5] (bolding in original). Those verified discovery responses, coupled with Defendant's more detailed declarations, see [Diehl Decl., pp. 4-5(¶¶ 16-23)], create a forceful presumption that Plaintiff and Mr. Shuttlesworth are married under South Carolina common law.[5] See, e.g., Jeanes v. Jeanes, 255 S.C. 161, 166, 177 S.E.2d 537, 539, (S.C. 1970) ("There is a strong presumption in favor of marriage by cohabitation, apparently matrimonial, coupled with social acceptance over a long period of time.").

The presumption of common law marriage can be overcome only through the presentation of "strong, cogent evidence that the parties in fact never agreed to marry." E.g., Callen v. Callen, 365 S.C. 618, 624, 620 S.E.2d 59, 62 (S.C. 2005).

---

[5] In this vein, Defendant clearly is able to validly testify regarding Plaintiff and Mr. Shuttleworth's reputation as husband and wife within the pertinent communities. Compare [Diehl Decl., p. 5(¶ 19)] (addressing such reputation), with In re Greenfield, 245 S.C. 595, 603, 141 S.E.2d 916, 920 (S.C. 1965) ("A witness who has observed the attitude of the community toward the marital status under inquiry as shown by its acceptance of the couple into its society as husband and wife, or by its refusal to so accept them, is competent to testify to reputation in that regard, and is not disqualified because his testimony is founded upon observation rather than discussion.").

The statements of "intent" or "non-intent" recited in the Cohabitation Agreement and Plaintiff's tendered affidavits are insufficient to rebut such presumption, for this Court would have to deem them conclusively credible--in violation of the governing standard of review--for Plaintiff to prevail. See, e.g., Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 209 (4th Cir. 2014) ("[F]actual details and credibility determinations are … not issues to be resolved at the summary judgment stage."); United States v. Seay, 718 F.2d 1279, 1282-2183 (4th Cir. 1983) ("The South Carolina Supreme Court has recognized that a common law marriage may exist *despite denials by the husband and wife*."); Owens v. Owens, 320 S.C. 543, 545, 466 S.E.2d 373, 375 (S.C. Ct. App. 1996) ("Assertions of both parties that their relation was one of open concubinage, or admission of nonmarriage by one party, fortified by strong circumstances, may suffice to overcome the presumption of their marriage from cohabitation and reputation.") (underscore in original). In sum, it is evident that genuine issues of material fact exist concerning whether a South Carolina common law marriage exists between Plaintiff and Mr. Shuttleworth, and, if it does, when such marriage arose. This Court should deny Plaintiff's Summary Judgment Motion accordingly.

### 3. Genuine Issues Of Material Fact Exist Concerning The Remedy Of Specific Performance

Plaintiff contends that she is entitled to specific performance as a remedy for Defendant's alleged contractual breach because (1) the Agreement contains a

"Specific Performance" clause; and (2) she purportedly has proven each "element" necessary to procure such remedy. See [Doc. 24-1, pp. 12-15]. Plaintiff's contentions lack merit, however, and even if they were meritorious, she still would not be entitled to that "equitable remedy of ancient origin." E.g., McLean v. Keith, 236 N.C. 59, 71, 72 S.E.2d 44, 53 (1952).

At the outset, Plaintiff invokes the Agreement's "Specific Performance" clause for support. See [Doc. 24-1, pp. 12-13]; see also [id., p. 14] (noting that "the Parties specifically agreed the (sic) damages, alone, are not an adequate remedy for a breach"). However, such a clause "does not negate [a] Plaintiff's burden of proving the equitable requirements for specific performance." Reeder v. Carter, -- N.C. App. --, 740 S.E.2d 913, 919 (2013).[6] The Agreement's "Specific Performance" clause, then, lends no support to the position she espouses.

Regarding the "elements" of specific performance, a litigant seeking such equitable remedy must prove that (1) no adequate remedy at law exists; (2) the obligor is able to perform; and (3) the obligee has fully performed under the contract. See, e.g., Reeder, 740 S.E.2d at 917. Addressing these elements in reverse:

- Element (3) obviously is unproven because genuine issues of material fact exist concerning whether Plaintiff remarried

---

[6] Plaintiff cites Reeder several times without mentioning this salient point. See [Doc. 24-1, pp. 13-14].

and thus wrongfully accepted payments from Defendant after the remarriage, see pp. 9-14, supra,

- As for element (2), Plaintiff must do more than simply state that Defendant is alive and employed to satisfy her burden of proving his ability to satisfy arrearages and/or make prospective payments, compare [Doc. 24-1, p. 14] (identifying Defendant's mortality and employment status as the sole bases for his alleged ability to pay), with Suzanne Reynolds, 3 Lee's North Carolina Family Law, § 14.35 at 14-101 (5th ed. 2002) ("If the record establishes that the obligor's expenses exceed income …, then the record does not support a finding that the obligor has the ability to pay arrearages and prospective support."), and

- With respect to element (1), Plaintiff utterly fails to recognize that the "no adequate remedy at law" analysis for arrearages differs from that applicable to prospective payments, compare [Doc. 24-1, pp. 13-14] (making no differentiation), with Praver v. Raus, 220 N.C. App. 88, 96, 725 S.E.2d 379, 385 (2012) ("Our courts have treated an order of specific performance to pay arrearages differently from an order of specific performance of prospective payments.").

Finally, Plaintiff says nothing about the well-settled principle that "specific performance of a contract is decreed only when it is equitable to do so." E.g., Hutchins v. Honeycutt, 286 N.C. 314, 318, 210 S.E.2d 254, 257 (1974). In this vein, a court will assess the propriety of specific performance "according to the equities of the situation as disclosed by a just consideration of all the circumstances of the particular case, and no positive rule can be laid down by which the action of the court can be determined in all cases." Byrd v. Freeman, 252 N.C. 724, 730, 114 S.E.2d 715, 720 (1960).

Here, Defendant paid roughly $1,742,815.67 in non-taxable funds to Plaintiff under the Agreement from September 2004 through October 2013. [Diehl Decl., p. 4(¶ 14)]. Defendant ceased paying Plaintiff only after she began cohabiting in an apparently matrimonial manner with Mr. Shuttleworth in the Toler's Cove Residence, which Defendant transferred to her years before in an unencumbered state. [Diehl Decl., pp. 2(¶ 8), 4(¶¶ 15-17)]. Plaintiff sued Defendant for stopping payment, contending that her cohabitation with Mr. Shuttleworth has been illicit,[7] not marital, since its inception, and thus does not terminate her right to payments under the Agreement. See, e.g., [Doc. 24-1, pp. 7-12]. Indeed, Plaintiff seemingly had the temerity to execute the Cohabitation Agreement in a concerted effort to protect her income stream under the Parties' Agreement. See [Doc. 24-4, pp. 11-13]. Under these circumstances, even if this Court ultimately were to determine that Plaintiff and Mr. Shuttleworth never married under the common law of South Carolina, it would be inequitable to afford her specific performance. Cf., e.g., Williams v. Habul, 219 N.C. App. 281, 291, 724 S.E.2d 104, 111 (2012) ("The equities in the instant case do not favor Plaintiff

---

[7] See, e.g., S.C. Code Ann. § 16-15-80 ("'Fornication' is the living together and carnal intercourse with each other … of a man and woman, both being unmarried."); S.C. Code Ann. § 16-15-60 ("Any man or woman who shall be guilty of the crime of … fornication shall be liable to indictment and, on conviction, shall be severally punished by a fine of not less than one hundred dollars nor more than five hundred dollars or imprisonment for not less than six months nor more than one year or by both fine and imprisonment, at the discretion of the court.").

and undermine Plaintiff's request for the equitable remedy of specific performance.").  Iniquity should not beget equity.

## IV. Conclusion

Based on the foregoing, this Court should either (1) grant Defendant's Rule 56(d) Motion and dismiss the Plaintiff's Summary Judgment Motion without prejudice to refiling after the close of discovery; or (2) deny the Summary Judgment Motion.

Respectfully submitted this 9th day of March, 2015.

**James, McElroy and Diehl, P.A.**

_____/s/ William K. Diehl, Jr._____
William K. Diehl, Jr.
N.C. State Bar No. 1187
600 South College Street
Charlotte, North Carolina 28202
704-372-9870 (telephone)
704-333-5508 (facsimile)
BDiehl@jmdlaw.com
***Counsel for Defendant***

## **CERTIFICATE OF SERVICE**

I hereby certify that this **BRIEF IN SUPPORT OF DEFENDANT'S RULE 56(d) MOTION AND IN OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION** was served upon Plaintiff's counsel of record via this Court's CM/ECF system as follows:

Robert E Sumner, IV – robertsumner@mvalaw.com
Trudy H. Robertson – trudyrobertson@mvalaw.com

This 9th day of March, 2015.

**James, McElroy and Diehl, P.A.**

      /s/ William K. Diehl, Jr.
William K. Diehl, Jr.
N.C. State Bar No. 1187
600 South College Street
Charlotte, North Carolina 28202
704-372-9870 (telephone)
704-333-5508 (facsimile)
BDiehl@jmdlaw.com
***Counsel for Defendant***